CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
January 27, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ROBERT BARNES,** ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:22-cv-493 |
| v. ) | |
| ) | |
| **HAROLD CLARKE, et al.,** ) | By: Hon. Robert S. Ballou |
| ) | United States District Judge |
| Defendants. ) | |

## MEMORANDUM OPINION

Robert Barnes, proceeding *pro se*, is a sex offender currently incarcerated at Lawrenceville Correctional Center in Lawrenceville, Virginia. He challenges Virginia Department of Corrections Operating Procedure 851.1 which denies at-home internet visitation to persons required to register on Virginia's Sex Offender and Crimes Against Minors Registry. Barnes contends that OP 851.1 violates his right to association under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc to 2000cc–5. The case is before the court on competing motions for summary judgment. The restrictions Barnes faces under OP 851.1 offend neither the First Amendment nor RLUIPA. I find that Defendants are entitled to judgment as a matter of law.

### I.  Background

Barnes is serving a 42-year sentence for the 2010 first degree murder of a 16-year-old victim, burglary/entering house with intent to commit rape, aggravated sexual battery, abduction, and attempted rape. Dkt. 27-1.  These convictions require Barnes to register on the Virginia Sex Offender Registry.  In 2022, while incarcerated at Red Onion State Prison,[1] Barnes requested at-

---

[1] Barnes was transferred to Lawrenceville Correctional Center after this suit was filed.

home internet visitation, but Red Onion State Prison denied his request under Operating Procedure 851.1 because Barnes is a registered sex offender.

OP 851.1 provides the visitation policies at VDOC facilities, including rules specific to convicted sex offenders. Section XI, titled Alternate Visitation Methods-Institutions, outlines the two types of permitted video visitation – visitor center video visitation and at-home internet visitation. The non-profit organization Assisting Families of Inmates organizes and operates the video center video visitation program at VDOC facilities, including Red Onion. Visitor center video visitation operates through visitor centers which Assisting Families of Inmates have established throughout Virginia. Sex offenders must apply and receive approval from the *Sex Offender Visitation Committee* before participating in visitor center video visitation. OP 851.1(IX)(A)(1)(c)(i)(a). The inmate then has a video visitation with an approved person who reports to the visitor center at the designated appointment time. Staff at the visitor center monitor the video visits in person while the visitation is in progress. White Aff. ¶ 7. All visitor center video visits are both monitored and recorded. OP 851.1(IX)(A)(1)(b)(iii).

In contrast, at-home internet visitation requires a visitor to establish a private internet connection directly with the inmate at the VDOC facility. OP 851.1(IX)(A)(2)(a). These visits are scheduled online by an approved visitor of an eligible inmate. The at-home video visits are recorded, but they are not actively monitored, as the VDOC has no way to "live monitor" connections that visitors make on their personal devices. White Aff. ¶ 8. The recordings are available to investigate any complaint of improper conduct during the visits. *Id.* Inmates required (or potentially required) to register on the *Sex Offender and Crimes Against Minors* registry are ineligible to participate in at-home video visitation. OP 851.1(IX)(A)(2)(c)(i). Because the VDOC does not actively monitor at-home internet visitation, it cannot ensure that no

inappropriate conduct occurs during the video visit or intervene immediately to stop such conduct.[2] White Aff. ¶ 10.

Inmates on the registry for a non-sexual crime against a minor may apply for an exemption to participate in at-home video visitation. OP 851.1(IX)(A)(1)(c)(ii)(b). Barnes' efforts to obtain an exemption to participate in at-home video visitation were denied because he is on the *Sex Offender and Crimes Against Minors* registry for a sexual offense.

Barnes asserts that he is a Christian and he sincerely believes that his religion requires him to preach to the public. Barnes asserts that OP 851.1 violates his First Amendment right to free exercise of religion and RLUIPA by preventing him from using the at-home internet visitation system to preach to the public throughout the nation. He names as defendants Harold Clarke, Director of the VDOC, A. David Robinson, Chief of Corrections Operations for VDOC, Jermiah Fitz, a Corrections Operations Administrator for VDOC, Yulonda Wyche, Manager of VDOC's Visitation Unit, and Rick White, the Warden of Red Onion State Prison.

## II. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).

---

[2] Barnes filed a Motion to Amend his Brief in Opposition to Summary Judgment to include additional evidence that the VDOC actively monitors at-home video visitation in real time. Dkt. 60. The motion (Dkt. 60) is **GRANTED** and this evidence will be considered for purposes of these contested summary judgment motions.

3

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

### III.    First Amendment- Freedom of Association

The First Amendment right of "'freedom of association is among the rights least compatible with incarceration,' *Overton* [v. *Bazzetta*, 539 U.S. 126, 131 (2003)], because '[t]he concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.'" *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021) (citing *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977)). It is unnecessary to define the exact level of associational rights retained by inmates in Virginia because "even those rights that *do* survive incarceration are afforded less protection by the Constitution than the rights of free citizens." *Desper*, 1 F.4th at 242. In fact, "there is no constitutional right to prison visitation, either for prisoners or visitors." *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), aff'd, 588 F.2d 913, 914 (4th Cir. 1978).

In *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), the Supreme Court reconciled the principles that inmates retain certain important constitutional protections with the deference owed to prison administrators "by holding that restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives." *Beard v. Banks*, 548 U.S. 521, 528 (2006) (internal citation and

4

quotation marks omitted). Here, Defendants' restrictions on Barnes' associational rights passes constitutional muster under *Turner*.

In assessing whether a regulation is reasonable, courts must consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether "alternative means of exercising the right [exist] that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there was an "absence of ready alternatives" to the regulation in question. *Turner*, 482 U.S. at 89–90 (internal quotation marks omitted). Significantly, in conducting this inquiry, the burden is not on the State to prove the validity of prison regulations but on the prisoner to disprove it. *Overton v. Bazetta*, 539 U.S. 126, 132 (2003).

In *Desper v. Clarke*, the Fourth Circuit, applying the *Turner* factors, found constitutional the OP 851.1 limitations on a sex offender's in-person visitation with his minor child. 1 F.4th at 244. The court held that "restrictions placed on registered sex offenders — especially those whose offenses involved minor victims — may be all the more austere." *Id.* at 246 (citing *Smith v. Doe*, 538 U.S. 84, 104 (2003) (upholding a "State's determination to legislate with respect to convicted sex offenders as a class")). The court stated, "'[t]he very object of imprisonment is confinement,' which not only punishes the offender by restricting his freedom, but also serves to deter others from committing crimes, protects society from dangerous individuals, and offers offenders a chance to rehabilitate themselves in a structured environment." *Id.* at 244 (quoting *Overton*, 539 U.S. at 131). The court found that the regulations limiting in-person visitation by a sex offender with a minor child are reasonably related to legitimate penological interests, and

5

that it is necessary to give substantial deference to the professional judgment of prison administrators tasked with defining and implementing the goals of the corrections system. *Id.* at 244.

The Eastern District in *Holloway v. Clarke* upheld the constitutionality of OP 851.1 and the at-home video visitation regulation, finding that restricting sex offenders from at-home visitation was reasonable and promoted the legitimate penological objectives of rehabilitation, security, and protecting children from harm. No. 3:20cv109, 2021 WL 5760853, at *3 (E.D. Va. Dec. 3, 2021). The *Holloway* court concluded that, "because of their specific criminal history, sex offenders are more likely to take advantage of unrestricted at-home video visitation to engage in sexual conduct." *Id.* at *3. The *Holloway* court found reasonable the regulation requiring family members "who wish to take advantage of the program to travel to an approved . . . visitation center, where the risk of inappropriate sexual conduct is significantly decreased." *Id.* at *7.

Consistent with the holdings of *Desper* and *Holloway*, I conclude that the VDOC has valid, rational reasons for the restrictions in OP 851.1 to exclude registered sex offenders from at-home visitation. These restrictions promote the legitimate governmental interests of rehabilitation, security, protection of the public, and permit only appropriate contacts for sex offender treatment programs. VDOC does not monitor the at-home video visitation calls in the same way and to the same extent that calls are monitored at the visitation centers. VDOC has no ability to control the actions of individuals outside of the prison, which presents a real risk that convicted sex offenders could use the private video connection during an in-home visitation for improper purposes.

Considering the second prong of *Turner*, alternative means exist for Barnes to exercise his right to freedom of association. OP 851.1 does not restrict Barnes from all video visitation. Under the regulation, Barnes' visitors who wish to participate in video visitation may travel to an approved visitation center where the risk of inappropriate sexual conduct is significantly decreased. Additionally, Barnes can participate in visitation in person, and by telephone, email and letter. As the Supreme Court observed in similar circumstances, "[a]lternatives to [video] visitation need not be ideal, however; they need only be available." *Overton*, 539 U.S. at 135.

Barnes has not suggested an appropriate alternative to the VDOC regulation, other than suggesting that the at-home video visitation is and/or can be monitored in real time. However, this would require significant resources by prisons to provide real-time live monitoring of the video calls, rather than simply recording the calls. *See Holloway v. Clarke*, 2021 WL 5760853, at *3, n. 2 ("To the extent that Holloway suggests that the VDOC should allow sex offender to utilize the at-home video visitation and simply monitor the video feed, it is apparent that alternative would impose a significant drain on prison personnel.").

The additional facts asserted by Barnes in opposition to the summary judgment do not change this analysis. Barnes argues that in-home video visitation is monitored under VDOC procedure. Barnes attaches a VDOC Response to a Written Complaint regarding video visitation procedures, which states that all video visits are monitored and recorded; video visits take place at monitors installed in the visitation room; staff conduct checks; and security staff may terminate a video visit when the inmate and/or visitor violates the video visit rules and regulations. Dkt. 35. Barnes relies upon additional evidence indicating that at-home video visits are monitored, including an email from the VDOC "Video Visitation Review" to a private citizen stating that "[a]ll video visitation are recorded through ViaPath (GTL)," and "[y]es [home

7

internet video visits] are monitored in real time and recorded."[3] Dkt. 60-1. Barnes argues that prison officials can stop inappropriate conduct and terminate video visits if necessary. Defendants acknowledge that the prison facility records all in-home video visits and the recordings are available for review if concerns arise about inappropriate behavior on the call. White Aff. ¶ 8. The prison facility does not formally monitor the in-home video visits, but staff provide some limited oversight during in-home video visits in the visitation room. Staff may conduct some checks at that time and may terminate the connection if a rule violation occurs. However, these restrictions do not adequately address the need for active monitoring of the video visits in real time, which is critical when dealing with sex offenders. *Id.* at ¶10.

Barnes asserts that inmates are required to wear jump suits with zippers in the back for video visitations. Dkt. 54-1. This requirement does not prevent the risk of inappropriate behavior or images by the non-incarcerated individual on the private at-home video connection.

Barnes argues out that VDOC allows registered sex offenders to participate in video bereavement visits, which he asserts are conducted with individuals outside of the prison using a personal electronic device on a private internet connection. Barnes states that there is a risk that inappropriate behavior could occur during these visits, and yet they are allowed by the VDOC. Dkt. 54, p. 8. Video bereavement visits are not contested in this Complaint, and the policies surrounding them are not before the court. A VDOC policy allowing registered sex offenders to

---

[3] Barnes filed a Motion to Compel, seeking to view video footage of an at-home video visit of a different inmate that was terminated due to lewd or obscene acts. Dkt. 58. Barnes asks to watch the recording of the video visit and requests "Visitation Activity Reports," "Daily Reports," and any other documents generated in connection with that video visit. Barnes argues that the information is relevant to the facts of this case because it would disprove VDOC's allegations that at-home internet visits are not actively monitored. *Id.* Barnes also moves to stay this case until he receives the video footage. *Id.* Barnes' Motion to Compel the video footage of an at-home video visitation by another inmate that was terminated due to lewd or obscene behavior, and any reports related to that visit (Dkt. 58) is **DENIED**. The termination of another inmate's at-home video visit due to lewd or obscene acts does not contradict the VDOC Defendants' sworn statement that at-home video visits are monitored with prison staff present in the visitation room and recorded, but are not actively or live monitored in real time like the AFOI visitation center visits. White Aff. ¶¶ 7, 8.

participate in video bereavement visits would not undermine the penological interests underlying the reasonable restrictions limiting sex offenders from at-home visitor visitation.

Accordingly, the restrictions on at-home visitation for registered sex offenders in OP 851.1 are rationally related to legitimate penological objectives and pass the rational-basis test set forth in *Turner v. Safely*. Defendants are entitled to judgment as a matter of law on Barnes' First Amendment freedom of association claim.

### IV.    Free Exercise Clause and RLUIPA

Barnes claims that Defendants violated his rights under the Free Exercise Clause of the First Amendment and under RLUIPA by preventing him from preaching to members of the public, which he believes is a requirement of his Christian faith. Am. Compl. ¶¶ 24, 29, 31, Dkt. 7. Barnes claims that his religion requires him to "[g]o into all the world and preach the gospel to every creature," and to "make disciples of all nations," which he interprets as requiring him to "travel to all 50 States and preach the gospel of Christianity to citizens therein." Dkt. 34, p. 2. Barnes acknowledges that he cannot physically travel throughout the states, but argues that he complies with the rules when he travels by virtual means, including through at-home video visitation with a person located in a different state. *Id.* Barnes asserts that his religious requirements are not satisfied by visitor center video visitation, because Assisting Families of Inmates has set up visitation centers only in Virginia. Barnes suggests that preaching through phone calls, letters and electronic messages does not fulfill the requirements of his religion. The Free Exercise Clause and RLUIPA claims fail because Barnes does not establish that the restrictions under OP 851.1, which exclude him from at-home video visits because he is a registered sex offender, substantially burden his right to practice his religion.

9

Under the Free Exercise Clause, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). To state a claim under the Free Exercise Clause, an inmate must show that he holds a sincere religious belief, and that a prison practice or policy places a substantial burden on his ability to practice his religion. *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018) (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981)). After making this threshold showing, the inmate must then show that the prison practice or policy is not "reasonably related to legitimate penological interests" under the *Turner v. Safely* four-part balancing test. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

Likewise, RLUIPA "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest."[4] *Holt v. Hobbs*, 574 U.S. 352, 356 (2015). Plaintiff bears the burden of establishing a prima facie case of a RLUIPA violation by showing that (1) he seeks to engage in an exercise of religion, and (2) the challenged conduct substantially burdens that exercise. *See* 42 U.S.C. § 2000cc–1. The burden then shifts to the government to demonstrate that the limitation on the plaintiff's religious exercise is the least restrictive means of furthering a compelling government interest. *Couch v. Jabe,* 679 F.3d 197, 200 (4th Cir. 2012). "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith v. Ozmint,* 578 F.3d 246, 250 (4th Cir. 2009).

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679

---

[4] "Government" includes the defendants, who work for the VDOC. *See* 42 U.S.C. § 2000cc-5(4)(A).

10

F.3d at 200 (quoting 42 U.S.C. § 2000cc-5(7)(A)). Barnes declared under penalty of perjury that he is a Christian and that his religion requires him to "[g]o into all the world and preach the gospel to every creature," and to "make disciples of all nations." Barnes interprets these religious tenants as requiring him to "travel to all 50 States and preach the gospel of Christianity to citizens therein." Dkt. 34, p. 2. In light of the Free Exercise Clause and RLUIPA's broad definition of "religious exercise," the court will assume that Barnes' particular beliefs regarding his need to preach to citizens of all 50 states are sincere religious beliefs which he seeks to exercise through the in-home video visits. *See, e.g.*, *Edwards v. King*, No. 721cv47, 2022 WL 875039, at *4 (W.D. Va. March 23, 2022) (citing cases).

Under RLUIPA and the Free Exercise Clause, Barnes bears the burden of persuasion on whether the contested restrictions substantially burden his exercise of his religion. *See* 42 U.S.C. § 2000cc-2(b); *Couch*, 679 F.3d at 200. A "substantial burden" on the free exercise of religion

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion on the other hand.

*Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (internal quotation marks and citation omitted). "Substantial burden" under RLUIPA is the same as in the First Amendment context. *Id.*

Here, Barnes claims that his religion requires that he "[g]o into all the world and preach the gospel to every creature," and "make disciples of all nations," which he interprets as requiring him to "travel to all 50 States and preach the gospel of Christianity to citizens therein." Dkt. 34, p. 2. Barnes acknowledges, as he must, that he cannot physically travel throughout the states, but argues that he complies with his religious requirement by traveling virtually, including through at-home video visitation with a person located in a different state. *Id.* Barnes believes that he cannot fulfill the requirements of his religion to preach through other types of

11

communication, such as phone calls, email and letters. Barnes provides no religious basis or reasoning to support his claim that at-home video visitation is the *only* method through which he can meet his religious requirement to preach to members of the public. Nothing prevents Barnes from preaching and proselyting to citizens throughout the United States by other available means including by telephone or through letters and email. *See Marron v. Miller*, No. 7:13CV00338, 2014 WL 2879745, at *2 (W.D. Va. June 24, 2014) ("No substantial burden occurs if the government action merely makes the 'religious exercise more expensive or difficult' or inconvenient, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion.") (citations omitted). The fact that Barnes is an incarcerated registered sex offender which excludes him from at-home video visits may inconvenience his desire to proselyte his faith throughout the United States. But, Barnes has many alternatives to preach his faith. The exclusion of Barnes from at-home video visits does not require him to violate or abandon his religious beliefs. Thus, he has not established that OP 851.1 places a substantial burden on his religious exercise.

The limitation of OP 851.1, to the extent it burdens Barnes's religious belief that he must preach to all citizens of the United States, is permissible under the First Amendment if it is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. No doubt exists that the VDOC has a legitimate penological interest in protecting the public and rehabilitating incarcerated sex offenders. "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile*, 536 U.S. 24, 33 (2002). Prison authorities have a legitimate interest in rehabilitating offenders before they are released to prevent future harm to the public. *Id.*; *Gale v. Moore*, 763 F.2d 341, 343–44 (8th Cir. 1985) (finding that state parole statute's "goal of preventing sex

crimes through rehabilitation and deterrence apparently constitutes a rational basis" for targeted treatment of sex offenders before release). Further, "prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). Restricting inmates who have committed sexual violence and crimes against minors from at-home internet visitation that is not fully monitored in real time is rationally related to that interest. Thus, Barnes has not met his burden under the First Amendment because the restrictions in OP 851.1 are reasonably related to the legitimate penological interests of protecting the safety of the public and rehabilitating sex offenders. As stated by the *Holloway* court, a limitation on at-home video visitation between a convicted sex offender and his family promotes the rational penological objectives of rehabilitation and security." *Holloway v. Clarke*, 2021 WL 5760853, at *3.

The Defendants may overcome a prima facie case under RLUIPA that OP 851.1 places a substantial burden on Barnes's exercise of his religion by showing that the restrictions in the policy further a "compelling governmental interest" by "the least restrictive means." *See* 42 U.S.C. § 2000cc-1(a); *see also Lovelace*, 472 F.3d at 187. The VDOC has a compelling interest in protecting the public, and specifically minors, and in rehabilitating incarcerated sex offenders. "[B]ecause of their specific criminal history, sex offenders are more likely to take advantage of unrestricted at-home video visitation to engage in sexual conduct." *Holloway v. Clarke*, 2021 WL 5760853, at *3.

The denial of at-home video visitation to registered sex offenders is the least restrictive means of furthering VDOC's compelling governmental interest. At-home video visits are recorded, but not monitored in real-time, and thus VDOC cannot ensure that nothing inappropriate occurs during the video visit. These same concerns do not exist for visitor center

visitation because those visits are actively monitored. Due deference must be given "to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citation omitted). Barnes may practice his religion and fulfill his religious need to preach to others nationwide. He may fulfill his religious beliefs through visitor center visitation, in-person visitation at the facility and by telephone, letters, and email.

Restricting Barnes from at-home video visitation, even if it burdened his ability preach, was the least restrictive means of furthering the VDOC's compelling governmental interests and I find that "a rational factfinder could only find for the [defendant]" on this issue. *Smith*, 578 F.3d at 250.

## V.    Conclusion

Defendants are entitled to judgment as a matter of law on Barnes' claims. Defendants' motion for summary judgment (Dkt. 26) is granted and Barnes' partial motion for summary judgment (Dkt. 56) is denied. An appropriate order will be entered.

Entered:  January 27, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge